**In re Sandra E. EPHRAIM, Debtor.**

**No. 99–59964–R.**

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

June 29, 2000.

Stuart Gold, Southfield, Michigan, for debtor.

Darryl Chimko, Shermeta & Chimko, P.C., Rochester Hills, Michigan, for creditor.

## Opinion and Order

STEVEN W. RHODES, Bankruptcy Judge.

Sandra Ephraim and Household Finance Corp. of America have requested that the Court enter a proposed Consent Order for Redemption of Property Under 11 U.S.C. § 722. The agreement in the proposed consent order would permit Ephraim to redeem certain furniture for $1,300. Because the parties have submitted no basis for the Court to find that the property to be redeemed is worth the proposed redemption price, the Court will decline to enter the proposed consent order.

### I.

When the proposed consent order was presented to the Court for entry, the Court noted that it was not accompanied by any evidence or indication of value. Accordingly, the Court scheduled and conducted a hearing on the redemption in order to determine whether the proposed redemption price was fair and thus whether to enter the proposed consent order.

At the hearing, the parties stated that the price was based on Ephraim's opinion and Household Finance's depreciation schedule. However, upon further inquiry, it became clear that the parties did not know what furniture was being redeemed, when it was purchased, or the purchase price. The Court therefore adjourned the matter to give the parties an opportunity to provide the Court with some basis for determining the value of the property.

At the adjourned hearing, Ephraim testified that the property consisted of a bedroom set that she purchased from Art Van Furniture in 1994 for approximately $2,200. She stated that she thought the property was worth about half of the original purchase price, although upon further questioning, she expressed doubt about whether it was worth even that much. She testified that the account balance of $4,770.23 included other furniture purchases made prior to 1994. However, she did not know what other furniture was purchased or the amounts of those purchases.

The attorney for Household Finance did not have the records for the purchases prior to 1994. He further stated that the $1,300 redemption amount was a negotiated figure based on the outstanding debt and his limited information available regarding the purchases.

## II.

Under 11 U.S.C. § 722, debtors have a right to redeem exempt or abandoned consumer goods used for personal, family, or household purposes by paying the allowed secured claim.

Federal Rule of Bankruptcy Procedure 6008 provides:

On motion by the debtor, trustee, or debtor in possession and after hearing on notice as the court may direct, the court may authorize the redemption of property from a lien in accordance with applicable law.

Fed.R.Civ.P. 6008.

In *In re Lopez*, 224 B.R. 439 (Bankr. C.D.Cal.1998), the creditor argued that Rule 6008 only required a motion and court approval if the parties disputed the value of the property to be redeemed. The court disagreed, stating, "There is no reason to suppose that the court is bound by the parties' valuation.... Although it is clear that the role of the court is greater when the value of property is in dispute, it does not follow that the role of the court is nonexistent when a debtor and creditor have stipulated to a value." *Id.* at 443. Although the court found the agreed upon value reasonable, it declined to approve the agreement because the debtor did not file a motion to redeem as required by Rule 6008. *Id.* at 444.

Likewise, in *In re White*, 231 B.R. 551, 554 (Bankr.D.Vt.1999), the court recognized that Rule 6008 requires that a debtor file a motion before redeeming property under § 722. The court further stated:

Neither Rule 6008 nor § 722 mandate that we accept the parties' determination of the allowed secured claim under redemption. As noted earlier, § 722 is silent as to court involvement. Further, Rule 6008 says that a court may, not must, approve a motion for redemption. Accordingly, we have discretion to deny authorization, even if the parties agree on redemption price.

*Id.* at 555.

The court further recognized that debtors often lack the requisite leverage in bargaining for a proper redemption price.

Creditors often use threats of repossession of all of the debtor's household goods as a means of obtaining payment. In fact, were the creditor to carry through on this threat and foreclose on the property, he [or she] would receive little, for household goods have little resale value, and are more valuable to the creditor in the debtor's hands as lever-

age for the creditor, because replacement costs of the goods are generally high.

*Id.* (citation omitted). *See also In re Spivey,* 230 B.R. 484, 490 (Bankr.E.D.N.Y. 1999) ("The right to foreclose on collateral that is essentially unmarketable but has a high potential replacement cost gives creditors substantial leverage that can be abused in the redemption context.").

In the present case, the parties did not provide the Court with any evidence as to the value of the property.[1] Ephraim testified with some doubt that she thought it might be worth half of the $2,200 estimated purchase price. The attorney for Household Finance made reference to a depreciation schedule, but that schedule was not produced. The parties agreed that there were other furniture purchases made, but neither party knew what those purchases were. In the end, it appears to the Court that the proposed $1,300 redemption price is simply a compromise of the debt, with no relationship to the value of the furniture to be redeemed.

Because the parties have not provided the Court with any basis to conclude that the redemption amount is reasonable, the Court must decline to enter the proposed consent order submitted by the parties.

It is so ordered.

---

**1.** The standard for establishing the redemption price under § 722 is currently a matter of some controversy. One line of argument is that the price should be set by "a standard which measures what [the creditor] would receive if the redemption did not occur and it were forced to repossess and sell the property in the most beneficial manner it could." *In re Donley,* 217 B.R. 1004, 1007 (Bankr.S.D.Ohio 1998). Another line argues that the price should be set by the "replacement value" standard under *Associates Commercial Corp. v. Rash,* 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997). *See, e.g.,* Kathryn R. Heidt and Jeffrey R. Waxman, "Supreme Court's Rash Decision Fails to Scratch the Valuation Itch", 53 Bus.Law. 1345, 1367–68 (August, 1998); David B. Wheeler, "Redemption under § 722: Possible End–Run Around Rash", 17–Nov. Am.Bankr.Inst.J. 16 (1998).

However, in this case, because the parties have not produced any evidence of value under either standard, it is not necessary to decide which standard should apply in the context of redemption.